LEO MALLOY v. R. A. PLEASANTS, CHIEF JUSTICE, ET AL.

No. 5815.   Decided June 12, 1924.

(262 S. W., 740).

**Mandamus—Conflict of Decisions—Venue—Sale and Shipment.**

The ruling of the Court of Civil Appeals herein (238 S. W., 984) that a memorandum of contract of purchase, sale and shipment, followed by billing to shipper's order with bill of lading attached to draft for price, was a contract in writing to deliver at destination, and supported venue of a suit in that county, was not in conflict with Southwestern Grain & Seed Co. v. Blumberg, 162 S. W., 1, which is here distinguished; and mandamus to require the question to be certified because of supposed conflict is refused (Pp. 102-104).

Original application by Malloy to the Supreme Court for writ of mandamus to the judges of the Court of Civil Appeals for the First District, requiring them to certify a question because of conflicting rulings.

The Supreme Court referred the application to the Commission of Appeals, Section A, for its opinion thereon, and here adopts same and orders the writ refused in accordance.

*Doss & Boynton,* and *Kennerly, Williams, Lee & Hill (Irl F. Kennerly* of counsel) for relator.

The decision in the present case is erroneous and should be reversed, and the decision in the case of Southwestern Grain and Seed Co. v. Blumberg, 162 S. W. 1, is correct and should be approved. To hold otherwise is to overrule the following well considered opinions by the Courts of Civil Appeals on the question presented in this case. Art. 1830, Subd. 5, R. S., 1911; Southwestern Grain & Seed Co. v. Blumberg, 162 S. W., 1; Gottlieb v. Ainsworth, 229 S. W., 341; Little v. Woodbridge, 1 White & W. Civ. Cases, Sec. 152; Lee v. Gilchrist Cotton Oil Co., 215 S. W., 977; Cohen v. Munson, 59 Texas, 236.

*Baker, Botts, Parker & Lovett,* for respondents.

There is no conflict between the decision of the Court of Civil Appeals below in Industrial Cotton Oil Properties v. Leo Malloy and other decisions of the Courts of Civil Appeals so as to require the certification of the question involved to the Supreme Court. Malloy v. Industrial Cotton Oil Properties, 238 S. W., 984; Southwestern Grain and Seed Co. v. Blumberg, 162 S. W., 1; Lee v. Gilchrist Cotton Oil Co., 215 S. W., 977; Elliot on Railroads, Volume 4, Page 63.

MR. JUDGE BISHOP delivered the opinion of the Commission of Appeals Section A.

Leo Malloy seeks by writ of mandamus to require the justices of the Court of Civil Appeals of the First Supreme Judicial District to certify to the Supreme Court the question as to whether the suit by appellee in the case of Malloy v. Industrial Cotton Oil Properties, 238 S. W., 984, is based upon a contract in writing obligating him to deliver Cottonseed in Harris County, so as to fix the venue of the suit in said county, under sub-division 5 of Article 1830, Revised Civil Statutes. He alleges that the Court of Civil Appeals in the above cause, in arriving at an opinion in the decision of this question, is in conflict with the opinion theretofore rendered by the Court of Civil Appeals for the Fourth Supreme Judicial District in the case

of Southwestern Grain and Seed Company v. Blumberg, 162 S. W. p. 1.

Industrial Cotton Oil Properties of Houston, Harris County, filed suit against Malloy who resides in Concho county, in the District Court of Harris County, to recover the sum of $812.00 alleged to be due as the difference in value between a car of cotton-seed delivered to Industrial Cotton Oil Properties at Houston, Texas, and the car of cottonseed purchased from Malloy. Malloy filed his plea of privilege to be sued in the county of his residence which was by the Industrial Cotton Oil Properties controverted. On hearing the trial court overruled the plea, and on appeal by Malloy from this order the Court of Civil Appeals affirmed the judgment of the trial court.

The facts, as stated in the opinion of the Court of Civil Appeals, are as follows:

"On December 2, 1919, J. W. Hooker, a traveling purchasing agent for plaintiff, called on defendant at Paint Rock in Concho county, where the defendant then and has since resided, and there entered into an agreement with him for the purchase by plaintiff of a carload of sound dry cotton seed, to be delivered to plaintiff at Houston, Harris county, upon payment of draft attached to bill of lading. The price agreed to be paid by plaintiff for the seed was '$75 per ton f. o. b. Paint Rock.' After this agreement had been made, Hooker executed and delivered to the defendant the following confirmation of the agreement:

" 'This is to confirm purchase of one car, 22 to 25 tons, sound dry cotton seed, from Leo Malloy, at $75.00 per ton, f. o. b. Paint Rock to be shipped soon as car can be obtained for loading. (Signed) J. W. Hooker, Traveling Representative for Industrial Cotton Oil Properties, Houston, Texas.

" 'Union National Bank.

" 'South Texas Commercial Bank.'

"The names 'Union National Bank' and 'South Texas Commercial Bank' were added to the agreement by the defendant as a memorandum of the names of the Houston banks with which plaintiff did business.

"On the same day the defendant delivered the car of seed to the railway company at Paint Rock for shipment and delivery at Houston to defendant's order.

"The bill of lading received by the defendant is in the regular and usual form of a bill of lading by which goods are consigned to the shipper's order, and contains the notation Notify Industrial Cotton Oil Properties at Houston, Tex.' On the next day, December 3, 1919, the defendant drew the following draft on plaintiff, to

which he attached the bill of lading and delivered both to the Guaranty State Bank at Paint Rock:

" 'Paint Rock, Texas, December 3, 1919, Pay to the order of Guaranty State Bank, Paint Rock, Texas, $1677.60, sixteen hundred seventy seven and 60/100 dollars.

" '(Signed) Leo Malloy.

" ' To Industrial Cotton Oil Properties, Houston, Texas.

" ' At Union National Bank.'

"Thereupon the bank credited defendant's account with the sum of $1,677.60 and forwarded draft to the Union National Bank at Houston. This draft was paid by plaintiff on December 9th, and the bill of lading delivered to it. The shipment was received in Houston on December 20th, and the freight charges paid by plaintiff."

The Court of Civil Appeals concluded that the confirmation of sale, together with "shipper's order" bill of lading and draft, constituted a written obligation of Malloy to deliver the cottonseed to Industrial Cotton Oil Properies at Houston in Harris county, Texas, and that under sub-division 5 of Article 1830 the Industrial Cotton Oil Properties could maintain its suit in Harris county. In reaching this conclusion the Court in effect says that the clause "at $75 per ton f. o. b. Paint Rock" contained in the confirmation of sale, when considered with the draft and bill of lading, should be construed to have been inserted "only for the purpose of fixing the price of the cottonseed, and binding the appellee to pay the freight charges to Houston, the place of final delivery."

In the case of Southwestern Grain and Seed Company v. Blumberg the company filed suit in the County Court of Bexar County against Blumberg and another, who resided in Guadalupe County, to recover damages alleged to have been caused by the failure of the defendants in that case to deliver to the company corn of the quantity and grade for which it had contracted with them. The defendants filed their plea of privilege to be sued in the county of their residence, which was by the court sustained, and the cause transferred to the County Court of Guadalupe County. The company appealed from this order to the Court of Civil Appeals of the Fourth Supreme Judicial District and the judgment was affirmed.

The facts as stated being as follows:

"The contract for the purchase of the corn was a verbal one, made through the medium of a telephone, but was confirmed by a letter written afterwards by appellants. The corn was to be delivered on board the cars at Seguin for shipment to El Paso, Tex. The bills of lading with drafts attached, drawn by appellees on appellants, were placed in a bank in Seguin and by it transmitted to a bank in San Antonio and were paid by appellants. The drafts were

marked 'paid' and with the bills of lading were delivered to appellants.''

The Court held that there was no contract in writing, or otherwise, to perform an obligation in Bexar County, and for this reason the defendants were entitled to insist that they be sued in Guadalupe county where they resided. Here, under the contract, the corn was to be delivered on board the car at Seguin for shipment to El Paso. It was not to be shipped to Bexar County. There was nothing to indicate an obligation to be performed in Bexar County where the suit was filed. It does not appear from the facts that the corn was shipped under a ''shipper's order'' bill of lading which by its terms provided that delivery be made at El Paso. The Court of Civil Appeals of the Fourth District did not have under consideration the terms of a ''shipper's order'' bill of lading, and does not purport to decide whether such terms should be construed to be an obligation to make delivery at the place of destination of shipment.

There is no conflict in the opinions of the Courts of Civil Appeals.

In the case of Malloy v. the Industrial Cotton Oil Properties the court held that under the evidence the ''shipper's order'' bill of lading, with draft attached, was part of the contract of sale and that its terms required delivery by the shipper to the purchaser at the place of destination of shipment, and for this reason venue obtained in the county of such destination.

In the case of Southwestern Grain and Seed Company vs. Blumberg, no evidence that the bill of lading was a ''shipper's order'' bill of lading, or that it was any part of the contract of sale, is shown. The Court held that it was no part of the contract; that the contract required delivery at the place of origin of shipment; and that venue did not obtain in a county other than that of the residence of defendants, which was neither that of origin nor destination of shipment.

We therefore recommend that the writ be denied.

The opinion of the Commission of Appeals is adopted and mandamus refused.

*C. M. Cureton,* Chief Justice.